Holly J. Johanknecht (AK Bar No. 0511103)
Meg K. Allison (AK Bar No. 0511091)
DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Ste. 103
Anchorage, AK   99503
Telephone: (907) 565-1002
Fax: (907) 565-1000
Email: hollyj@dlcak.org
         mallison@dlcak.org

**IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF ALASKA**

| | |
|---|---|
| Disability Law Center of Alaska, Inc., ) | |
| ) | |
| Plaintiff, ) | Case No. 3:07-cv-00131 RRB |
| ) | |
| v. ) | Memorandum in Support of |
| ) | Plaintiff's Motion for Preliminary |
| ANCHORAGE SCHOOL DISTRICT, ) | Injunction and Temporary |
| ) | Restraining Order |
| Defendant. ) | |
| ) | |

_____

## INTRODUCTION

The Disability Law Center of Alaska ("DLC") has brought an action to challenge the Anchorage School District's ("ASD") refusal to release to DLC documents relating to a complaint of abuse and/or neglect that occurred in an ASD intensive needs special education classroom. Federal law provides that such documents must be released to Plaintiff so it can carry out its mandate to investigate incidents of alleged abuse and neglect.  The ASD's refusal to provide the requested documents not only impinges DLC's ability to carry out it federal mandate, but also delays notification to the students' parents about the serious allegations of abuse and/or neglect DLC has received.

*Disability Law Center of Alaska v. Anchorage School District*                                           Page 1 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB

Case 3:07-cv-00131-RRB   Document 5   Filed 07/23/07   Page 1 of 14

## FACTS

On May 25, 2007 DLC received two separate complaints about an intensive needs classroom at Lake Otis Elementary School. These complaints alleged that abuse and/or neglect occurred in the classroom and identified one teacher (M. M.[1]) and one aide as being involved in the abuse and/or neglect. Declaration of Holt, ¶ 2. The intensive needs classroom serves elementary aged children with disabilities.[2]

On June 25, 2007 DLC received two further corroborating complaints. Declaration of Cowan at ¶ 4. . On or about June 26, 2007 DLC was contacted by the parent/guardian of a student in the classroom. *Id*. at ¶ 6. As a result of these complaints, DLC initiated an investigation. *Id*. at ¶ 7. That parent made a complaint that corroborated the four previous complaints previously received by DLC, and provided additional information about specific incidents as well as general complaints about the classroom, teacher and staff. *Id.*

On June 29, 2007 DLC made its first request for records pursuant to its federal access authority. Declaration of Cowan, Ex. A. The requested records included:

    a.    Directory information (names and contact information for the parents/guardians of the students in the class),

    b.    Names of staff working in the classroom, including related service providers,

    c.    Information regarding any and all complaints regarding the classroom and teachers/staff people under investigation,

---

[1] In order to protect the privacy of the students and ASD staff involved, any references made to ASD staff will be made using only the person's initials.

[2] A student is defined as an "intensive student" if "the student has been identified for special education and the student needs and receives individual attention and services that are significantly more complex and frequent, and require significantly more resources to provide, than the services received by other special education students." 4 AAC 52.700(c).

*Disability Law Center of Alaska v. Anchorage School District*     Page 2 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB

Case 3:07-cv-00131-RRB    Document 5    Filed 07/23/07    Page 2 of 14

      d.     Any internal investigation conducted by ASD connected with the complaints received.

In a letter dated July 2, 2007 ASD refused to provide DLC with the requested records. Affidavit of Johanknect, Ex. B. ASD required that DLC provide them with additional information regarding the complaints it received before any records would be released. In a letter dated July 3, 2007 DLC responded by informing ASD of the types of complaints it has received. Affidavit of Johanknect, Ex. C. DLC also informed ASD that based on the complaints, and the information it had gathered through its investigation, that a determination of probable cause had been made. *Id*.

On July 6, 2007 DLC received a sixth complaint about the classroom, teacher and staff under investigation. This complaint corroborated the previously received complaints alleging abuse/neglect. Declaration of Cowan, ¶ 9.

In a letter dated July 11, 2006 ASD responded by providing DLC with portions of the requested records. Affidavit of Johanknect, Ex. D. However, ASD refused to provide DLC with the requested directory information. *Id*. Once again, on July 12, 2007 DLC informed ASD that a determination of probable cause had been made and a number of complaints had been received, thus, triggering DLC's access authority. Affidavit of Johanknect, Ex. E. In that letter, DLC also informed ASD that if the requested directory information were not provided, DLC would initiate a lawsuit to obtain the information. *Id*. On July 20, 2007 ASD again refused to provide DLC with the requested directory information. Affidavit of Johanknect, Ex. F. To date, the requested directory information has not been provided to DLC. Affidavit of Johanknect, ¶8.

Without the requested directory information, DLC is significantly impeded in moving forward with its investigation. Without ASD providing the names and contact information for the

*Disability Law Center of Alaska v. Anchorage School District*     Page 3 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB
Case 3:07-cv-00131-RRB   Document 5   Filed 07/23/07   Page 3 of 14

student's parents/guardians, DLC has no way of contacting those parents and informing them of the very serious allegations DLC has received.

## ARGUMENT

I. **DLC IS ENTITLED TO DIRECTORY INFORMATION UNDER ITS FEDERAL ACCESS AUTHORITY.**

A. <u>DLC's access authority</u>.

The Disability Law Center of Alaska is an independent, private, nonprofit agency established in 1978 pursuant to the Developmental Disabilities Assistance and Bill of Rights Act. 42 U.S.C. § 15001 *et seq*. ("DD Act"). Part of the DLC's mandate, as the Protection and Advocacy System ("P&A") for Alaska is to investigate instances of abuse and neglect in institutions within the state which serve people with mental and physical disabilities. In order that the P&A agencies can fulfill this function, Congress granted the P&A agencies authority to access the records of facilities, which serve the disabled population. When the P&A agency has probable cause to believe that abuse or neglect has occurred, the regulations allowing access to records to conduct an investigation are triggered.

In the DD Act Congress mandated that each state receiving DD Act funds establish such a protection and advocacy ("P&A") system to protect the rights and interests of persons with developmental disabilities. DLC is the advocacy system for the State of Alaska. The authority for establishment of the P&A for Alaska can be found at AS 47.80.020.

Courts have uniformly held that the P&A access authority requires facilities to permit the agency to operate effectively, and with broad discretion and independence in gaining access to facilities and records for investigative purposes. *See, e.g., Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003); *Pennsylvania Protection and Advocacy, Inc. v. Houstoun*, 228 F.3d 423 (3rd Cir. 2000); *Alabama Disabilities Advocacy Program v. J.S.*

*Disability Law Center of Alaska v. Anchorage School District*   Page 4 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB

Case 3:07-cv-00131-RRB   Document 5   Filed 07/23/07   Page 4 of 14

*Tarwater Developmental Center*, 894 F. Supp. 424 (M.D. Ala. 1995), aff'd 97 F.3d 492 (11th Cir.1996); *Mississippi Protection & Advocacy System, Inc. v. Cotten*, 1989 WL 224953 (S.D.Miss. 1989), *aff'd*, 929 F. 2d 1054 (5th Cir 1991); *Robbins v. Budke* 739 F.Supp. 1479 (D.N.M. 1990); *Michigan Protection & Advocacy Service, Inc. v. Miller*, 849 F. Supp. 1202 (W.D. Mi 1994); *Maryland Disability Law Center, Inc. v. Mount Washington Pediatric Hospital, Inc.*, 106 Md. App. 55, 664 A. 2d 16 (Md. Ct. of Special App.1995).

Pursuant to an investigation into abuse or neglect allegations, information in possession of a facility including reports prepared by individuals and entities performing certification or licensure reviews, or by professional accreditation organizations, and related assessments prepared for a facility by its staff, contractors, or related entities;[3] and information in professional, performance, building, or other safety standards, demographic or statistical information relating to a facility. DLC has the authority to access the records listed above, and other records, whether written or in another medium, draft or final, including but not limited to handwritten notes, electronic files, photographs, videotapes, or audiotapes.[4] In this case, key information is the names and contact information for the students in the Lake Otis intensive needs classroom.

Under the statute, the receipt of complaints regarding the status or treatment of an individual with disabilities, and/or a determination of probable cause to suspect abuse or neglect are two ways DLC's authority to access records is triggered. DLC has received a number of complaints, additionally, a determination of probable cause has been made in this case, based on the complaints received, and other information gathered during the course of its investigation, to

---

[3] 45 C.F.R. § 1386.22(c)(1); 42 C.F.R. § 51.41(c)(4); *Pennsylvania Protection and Advocacy, Inc. v Houstoun*, 228 F.3d (3d Cir. 2000) (P&A agencies are entitled to access "peer review" records despite state law restrictions on their disclosure); *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003) (same holding).
[4] 45 C.F.R. § 1386.22(c)(2); 42 C.F.R. § 51.41(c)(5).

*Disability Law Center of Alaska v. Anchorage School District*  Page 5 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB

suspect that abuse and/or neglect of students in the intensive needs classroom at Lake Otis Elementary occurred. The DD Act definition of probable cause at 45 C.F.R. § 1386.19 states that:

> Probable cause means a reasonable ground for belief that an individual with developmental disabilities has been, or may be, subject to abuse or neglect. The individual making such determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect.

The standard for probable cause is met here. The DLC received information and complaints from reliable sources that ASD staff in the intensive needs classroom at Lake Otis Elementary has engaged in actions that may constitute abuse and/or neglect toward students with disabilities.

Defendant refuses to provide the requested records to DLC citing a lack of probable cause. It is well established that a P&A agency is the final arbiter of probable cause.[5] Defendant requires that DLC provide additional information regarding the complaints received. There is no requirement that DLC provide the specific information on which such a determination was made. As a matter of practice, DLC does not disclose the details of complaints or its determinations of probable cause. This practice serves two important purposes, (1) it protects the evidence from

---

[5] *Arizona Center for Disability Law v. Allen*, 197 F.R.D. 689, 693 (D. Az. 2000) ("the P&A laws and the regulations promulgated thereunder support the conclusion that a P&A is the final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect.). *See also Center for Legal Advocacy v. Earnest*, 188 F.Supp.2d 1251, 1257 (D. Colo. 2002), *Iowa Protection and Advocacy Services, Inc. v. Rasmussen*, 206 F.R.D. 630 (S.D. Iowa 2001), *Iowa Protection and Advocacy Services, Inc. v. Gerrard Treatment Programs*, 152 F.Supp.2d 1150, 1159 (N.D. Iowa 2001) (holding the P&A received sufficient information to provide it with probable cause with respect to all residents of a facility), *Alabama Disabilities Advocacy Program v. Tarwater Developmental Center*, 97 F.3d 492, 498-499 (11th Cir. 1996), *Maryland Disability Law Center v. Mt. Washington Pediatric Hospital Inc.*, 106 Md.App 55, 664 A.2d 16, 24-25 (stating that the initial determination of probable cause must be made by the P&A), *Office of Protection and Advocacy for Persons with Disabilities v. Armstrong*, 266 F.Supp.2d 303, 321(D.Conn. 2003) ("it is by now a settled principal that the P&A is the 'final arbiter of probable cause'").

*Disability Law Center of Alaska v. Anchorage School District*                     Page 6 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB
Case 3:07-cv-00131-RRB   Document 5   Filed 07/23/07   Page 6 of 14

potential tampering/destruction, and (2) it protects the individuals who made the complaints.[6] In many cases, DLC receives complaints from individuals who wish to remain anonymous, for fear that if identified, they may be retaliated against for their cooperation with DLC. In addition, DLC is required to maintain the confidentiality of its sources, as well as any potential victims, and cannot release that information to anyone, without consent.[7] Practically, this means that in many cases DLC is not permitted to release the details of complaints as those details would readily identify the individual who made the complaint.

DLC has requested the directory information for all students in the identified classroom. The complaints received by DLC contained general allegations of classroom conditions, and the treatment the students received. These complaints are sufficient to enable DLC to make a determination of probable cause with regards to the all students in the classroom. "Although the P&A Acts speak in terms of the 'individual' or 'an individual' nothing in the statute suggests that [a P&A] cannot seek authorization for a number of individuals if it had made a probable cause determination that multiple individuals have been subjected to abuse or neglect at a facility." *State of Connecticut Office of Protection and Advocacy for Persons with Disabilities v. Hartford Board of Education*, 464 F.3d 229, 245-246 (2d Cir. 2006). In addition, "a probable cause determination could be made of the basis of 'general conditions or problems that affect many or all individuals in a facility." *Id* (internal citations omitted).

## II. STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

The purpose of a preliminary injunction is to preserve rights pending resolution of the merits of the case. *Big Country Foods v. Bd. Of Education of the Anchorage Sch. Dist.*, 868 F.2d 1085, 1088 (9th Cir. 1989). In *United States v. Odessa Union Warehouse Co-op.,* 833 F.2d 172, 174

---

[6] 45 C.F.R. § 1386.22(e), 42 C.F.R. §51.45(a) and 45 C.F.R. § 1386.21(i).
[7] *Id*.

*Disability Law Center of Alaska v. Anchorage School District*                      Page 7 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB

Case 3:07-cv-00131-RRB   Document 5   Filed 07/23/07   Page 7 of 14

(9th Cir.1987), the Ninth Circuit Court of Appeals described the standard for determining claims for preliminary injunctive relief. The factors traditionally considered in determining whether to grant a preliminary injunction in the Ninth Circuit are (1) the likelihood of plaintiff's success on the merits; (2) the possibility of plaintiff's suffering irreparable injury if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by the provision of preliminary relief. *Id*. To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in its favor. These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Id*. Accordingly, the Court must first determine whether the plaintiff has shown sufficient likelihood of success on the merits of her claims and probability of irreparable injury in the absence of injunctive relief to qualify for such relief. Furthermore, if the plaintiff makes the requisite showing, the court then must balance the harms to each party that would result from a grant or denial of injunctive relief to determine if such relief is appropriate. *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987); *Save the Yaak Committee v. Block,* 840 F.2d 714, 722 (9th Cir.1988). Plaintiffs are entitled to a temporary restraining order if plaintiffs will suffer immediate and irreparable injury. Fed.R.Civ.P. 65(b).

    A. <u>DLC will suffer irreparable harm without the Court's intervention</u>.

The Disability Law Center, and the individuals with disabilities that DLC is mandated to protect, will suffer irreparable harm if an order providing DLC access to the directory information is not granted. Prompt access to this type of information is critical so that DLC can

*Disability Law Center of Alaska v. Anchorage School District*     Page 8 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB

Case 3:07-cv-00131-RRB   Document 5   Filed 07/23/07   Page 8 of 14

contact the legal guardians of persons with disabilities to attempt to obtain consent to access relevant records, discuss concerns regarding treatment and to provide information regarding the DLC's services. Without this information, DLC's ability to carry out its mandate to investigate allegations of abuse and neglect and to protect individuals with disabilities is frustrated.

The requested records are a vital part of any investigation. Without the directory information, DLC is unable to contact parents/guardians, a valuable source, regarding the allegations and DLC is unable to gain additional evidence and information as that information is otherwise unavailable. Many students in an intensive needs classroom, like the one involved here, are non-verbal or have limited verbal ability. That means these children are not able to tell DLC what, if anything, has happened to them. The best source of information about what a child may have suffered comes from a parent/guardian who are attuned to the moods and behaviors of their child and can use those as an indicator of their child's feelings and experiences. Without the names and contact information of the parents/guardians, DLC has no way of discovering this important information.

Several courts have held that similar frustrations to a P&A agencies investigations are sufficient irreparable harm to support injunctive relief. "[D]efendant's refusal to provide it [P&A agency] with the records it is entitled to review (indeed charged to review as a part of its responsibilities does, in a very real and readily identifiable way, pose a threat to the plaintiff's being able to discharge its obligations. And no amount of damages will remedy that sustained harm." *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F.Supp.2d 1039, 1050 – 1051 (E.D. Wisc., 2001), "IPAS is still irreparably harmed by being prevented from pursuing fully its right to access records and patients" *Iowa Protection and Advocacy, Inc. v. Gerard Treatment Programs*, 152 F.Supp.2d 1150, 1173 (N.D. Iowa, 2001).

*Disability Law Center of Alaska v. Anchorage School District*　　　　　　　　　　　　　　Page 9 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB

Case 3:07-cv-00131-RRB   Document 5   Filed 07/23/07   Page 9 of 14

The serious nature of the harm sustained by DLC as a result of Defendant's refusal to provide the requested records, and lack of adequate remedy at law without the court's intervention support plaintiff's motion for injunctive relief.

B. <u>DLC can show it is likely to succeed on the merits of its claims</u>.

The records requested by DLC, the names and contact information of the parent's and/or guardians of the students fall clearly within DLC's federal statutory access authority. The DD Act authorizes DLC to review and obtain copies of the records of individuals with disabilities, and other records that are relevant to conducting an investigation. 42 U.S.C. § 15043(a)(2). There can be no question, that the names and contact information of parents and/or guardians is information relevant to conducting an investigation. Parents and guardians are an important source of information; they are perhaps the best source of information about the students themselves.

Secondly, a primary part of any investigation in a school setting is a review of the educational records, including the Individualized Educational Plan (IEP) of a student. In order for DLC to be authorized to obtain those types of records, it needs to contact the parent or legal guardian, and offer its assistance to resolve the situation. 42 U.S.C. 15043(a)(2)(I)(iii). Without the names and contact information, DLC is unable to make such an attempt. Thus, not only does ASD's refusal to provide the directory information exempt two potentially significant sources of information and evidence (parental testimony and educational records) it also prevents DLC from offering its assistance to the parents/guardians.

Courts in several circuits have ruled that a P&A agency is entitled to the names and contact information for individuals with disabilities about whom they have received complaints and/or made a determination of probable cause. *See eg. State of Connecticut Office of Protection*

*Disability Law Center of Alaska v. Anchorage School District*                                              Page 10 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB
Case 3:07-cv-00131-RRB   Document 5   Filed 07/23/07   Page 10 of 14

*and Advocacy for Persons with Disabilities v. Hartford Board of Education*, 464 F.3d 229 (2d Cir. 2006), *Disability Rights Wisconsin, Inc. v. State of Wisconsin Department of Public Instruction*, 463 F. 3d 719 (7th Cir. 2006)."Implicit in the statute [42 U.S.C. 15043(a)(2)(I)(iii)] is the notion that if a complaint or probable cause is established, the name of a guardian must automatically be turned over the P&A [agency] so the P&A [agency] can contact the guardian to offer assistance." *Pennsylvania Protection and Advocacy, Inc. v. Royer-Greaves School for Blind*, 1999 WL 179797 at 10.

Finally, even if the many complaints received by DLC, and its determination of probable cause are not sufficient to trigger DLC's authority to access the requested information, 45 C.F.R. § 1386.22(i) states that,

> If a system is denied access to facilities and its programs, individuals with developmental disabilities, or records covered by the Act it shall be provided promptly with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name and address of the legal guardian, conservator, or other legal representative of an individual with developmental disabilities.

Thus, when a records request is denied due to an alleged lack of authorization, the facility is required to provide the names and contact information of the parents/guardians.

In this case, ASD refused to provide the requested information because of an alleged lack of probable cause. This alleged lack of probable cause means that DLC would not be authorized to access the requested information. As a result, ASD's refusal to provide DLC with the directory information, as a matter of course entitles DLC to that very information. "[A]ll a P&A [agency] need to do to receive a list of guardians is to ask for it." *PA Protection and Advocacy v. Royer Greaves*, 1999 WL 179797 at 11.

*Disability Law Center of Alaska v. Anchorage School District*  Page 11 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB
Case 3:07-cv-00131-RRB   Document 5   Filed 07/23/07   Page 11 of 14

C. <u>The Balance of Hardships Tips in Favor of DLC.</u>

ASD suffers no hardship in providing the requested records to DLC. The information is easily accessible to ASD staff, and obtaining it would not require a significant investment of time or resources. Furthermore, there can be no harm to defendant by forcing them to comply with federal law in the form of the DD Act.

Moreover, if Defendant has concerns regarding the privacy of the student information once it is provided to DLC, the Court should note that DLC is required to protect information received through its federal access authority as confidential as the source from which the information is gathered. See 42 U.S.C. § 10806(a).[8] In this instance that would mean that DLC cannot release the directory information without the consent of the student's parents. In addition to statutory confidentiality requirements, "P&A agencies have a duty to serve individuals with disabilities or mental illness. Because of that role [a P&A agency] is under an especially significant duty of confidentiality." *Disability Rights Wisconsin, Inc. v. State of Wisconsin Department of Public Instruction*, 463 F.3d 719, 728 (7th Cir. 2006) (internal citations omitted).

While Defendant would suffer no hardship if they released the information, DLC would suffer significant hardship should they be prevented from obtaining the requested information. As noted above, the parents/guardians of the students provide two essential types of information, vitally important to DLC's investigation (1) their own testimony about their child, and (2) they enable DLC to access the educational records of the student. Without these two important sources of information and records, DLC would be unable to complete a full and complete investigation, thus preventing DLC from complying with its mandates to investigate allegations of abuse/neglect, and to protect individuals with disabilities.

---

[8] Although the confidentiality provision falls within the PAIMI Act, rather than the DD Act, DLC applies the confidentiality requirement above to all its investigations, regardless of what act DLC's authority stems from.

*Disability Law Center of Alaska v. Anchorage School District*            Page 12 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB

D. ASD has adequate protection if a temporary restraining order or preliminary injunction is issued.

Civil rule 65(c) requires that, before a restraining order or preliminary injunction can be issued, the applicant must give adequate security for any damages a party who is found to be wrongfully enjoined or restrained may suffer. In this case there is absolutely no potential that ASD will suffer any damages from being required to turn over the directory information. The requested information is readily accessible to ASD.[9] It would take minimal staff time to procure the necessary information.

## CONCLUSION.

The DLC respectfully requests that this Court enter an order requiring ASD to turn over to DLC a copy of the directory information of the students in the intensive needs classroom of M. M. The DLC is entitled to this information pursuant to its federally granted access authority to conduct an investigation of an incident of abuse and/or neglect.

Respectfully submitted,

/s/ Holly J. Johanknecht
Holly J. Johanknecht (AK Bar No. 0511103)
DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Ste. 103
Anchorage, AK 99503
Telephone: (907) 565-1002
Fax: (907) 565-1000
Email: hollyj@dlcak.org

/s/ Meg K. Allison
Meg K. Allison, (AK Bar No. 0511091)
DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Ste. 103
Anchorage, AK 99503
Telephone: (907) 565-1002
Fax: (907) 565-1000
Email: mallison@dlcak.org

---

[9] ASD has provided similar directory information to DLC without objection in other investigations concerning allegations of abuse and/or neglect in its schools. Affidavit of Cowan ¶ 3.

*Disability Law Center of Alaska v. Anchorage School District*            Page 13 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB

Case 3:07-cv-00131-RRB   Document 5   Filed 07/23/07   Page 13 of 14

**Certificate of Service**
I hereby certify that on the 23rd day
of July 2007 a true and correct
copy of this document was served electronically
via email on:

Brad Owens
bradowens@jdolaw.com

Kimberly Allen
kallen@jdolaw.com

/s / Holly Johanknect
Holly Johanknect

*Disability Law Center of Alaska v. Anchorage School District* Page 14 of 14
Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
3:07-cv-000131 RRB

Case 3:07-cv-00131-RRB   Document 5   Filed 07/23/07   Page 14 of 14