I

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

DISABILITY LAW CENTER OF
ALASKA, INC.,

        Plaintiff,

vs.

ANCHORAGE SCHOOL DISTRICT,

        Defendant.

Case No. 3:07-cv-0131-RRB

**ORDER DENYING MOTION FOR
TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Before the Court is Plaintiff Disability Law Center of Alaska ("DLC") with a Motion for Temporary Restraining Order and Preliminary Injunction at Docket 4. DLC seeks an order requiring Defendant Anchorage School District ("ASD") to release names and contact information for the parents and guardians of special needs students at Lake Otis Elementary School. ASD opposes at Docket 17 on the grounds that the information is protected and not subject to disclosure under the Family Educational Rights and Privacy Act

("FERPA"),[1] and the Individuals with Disabilities Education Act ("IDEA").[2]  The Court heard oral argument on DLC's Motion for Consideration on Shortened Time on July 31, 2007.

The Court has reviewed DLC's Motion at Docket 4 and Notice of Supplemental Authority at Docket 15, ASD's Opposition at Docket 17, and DLC's Reply at Docket 18.  The Court has also reviewed ASD's Motion for Leave to File Supplemental Opposition at Docket 20.  Because the Court finds the original briefing adequate to resolve this matter, Defendant's Motion at Docket 20 is denied.

For the reasons set forth herein, DLC's Motion for Temporary Restraining Order and Preliminary Injunction at Docket 4 is denied.

## II.  BACKGROUND

This matter arises from a dispute between DLC and ASD over access to contact information for the parents and guardians of children attending special needs classrooms at Lake Otis Elementary School during the 2006-07 academic year.

DLC is the designated protection and advocacy ("P&A") agency for the State of Alaska pursuant to the Developmental

---

[1]     20 U.S.C. § 1232g.

[2]     20 U.S.C. §§ 1400-87.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 2
3:07-CV-0131-RRB

Disabilities Assistance and Bill of Rights Act ("DD Act"),[3] the Protection and Advocacy for Mentally Ill Individuals Act ("PAMII"),[4] and the Protection and Advocacy for Individual Rights Act ("PAIR")[5] (collectively "P&A Acts"). As the P&A agency for Alaska, DLC is authorized to "investigate incidents of abuse or neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred."[6]

ASD is the local school district responsible for providing educational services, including special education, to Anchorage students. Lake Otis Elementary School, a school overseen by ASD, has two self-contained special education classrooms which serve children who require a low teacher-student ratio in a special education setting. Each classroom also has a minimum of two adult teaching assistants and fewer than 10 children.[7] M.M. was one of the special education teachers during the 2006-07 school year.[8]

---

[3] 42 U.S.C. § 15041, et seq.

[4] 42 U.S.C. § 10801, et seq.

[5] 29 U.S.C. § 794e, et seq.

[6] 42 U.S.C. §§ 15041(a)(2)(B); 15043(a)(2)(A)(i).

[7] Docket 17-2 at 2.

[8] In order to protect the privacy of the students and ASD staff involved, the Court will follow the practice of referring to

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 3
3:07-CV-0131-RRB

M.M. resigned at the end of the 2006-07 school year and none of the teaching assistants who served in his classroom will be returning to for the 2007-08 school year.[9]

Plaintiff contends that since May of 2007, DLC has received a total of six separate and corroborating complaints of abuse and/or neglect in the other special needs classroom involving M.M. and his teaching assistant, C.B. On May 25, DLC received two separate complaints alleging abuse and/or neglect in M.M.'s classroom.[10] DLC received two further corroborating complaints on June 25.[11] On or about June 26, DLC received a complaint from a parent/guardian of a student in the classroom that corroborated the four previous complaints and provided additional information about specific incidents as well as general complaints about the classroom, teacher and staff.[12]

On June 29, 2007, DLC initiated an investigation and requested the following records from ASD: (a) Directory information (names and contact information for the parents/guardians of the

_____

ASD staff using only initials.

[9]     Docket 17 at 5.

[10]    Docket 5-3.

[11]    Docket 5-2.

[12]    Id., ¶ 6.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 4
3:07-CV-0131-RRB

students in the class;[13] (b) Names of staff working in the classroom, including related service providers; (c) Information regarding any and all complaints regarding the classroom an teachers/staff people under investigation; (d) Any internal investigation conducted by ASD connected with the complaints received.[14] On July 6, 2007, after initiating an investigation, DLC received a sixth complaint.[15]

As a result of DLC's June 29 records request, ASD learned of an incident that had been reported to the Principal at Lake Otis Elementary and the ASD Superintendent involving one child in M.M.'s classroom. ASD also learned of a series of other allegations involving personnel in both of the special needs classrooms.[16]

ASD initially refused to provide any records to DLC until DLC provided additional information regarding the complaints.[17] DLC informed ASD that based on the complaints and results of the

_____

[13]     Because the phrase "directory information" has a specific legal meaning under federal educational privacy laws which both parties agree does not characterize the parent/guardian contact information sought by DLC, the Court will refer to the requested information as parent/guardian contact information. See 20 U.S.C. § 1232(a)(5)(A); Docket 17 at 15-17, Docket 18 at 3.

[14]     Docket 5 at 2-3.

[15]     Docket 5-2, ¶ 9.

[16]     Docket 17 at 6-7.

[17]     Docket 5-6.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 5
3:07-CV-0131-RRB

initial investigation, it had probable cause to believe that neglect or abuse had occurred. However, DLC did not provide ASD with any details regarding the complaints or the time frame during which the alleged events occurred and has been reluctant throughout to disclose the specifics of its concern to ASD.[18]

Through an exchange of letters, ASD provided some of the information DLC had requested, but maintained its refusal to provide DLC with parent/guardian contact information on the grounds that it constituted personally identifiable information not subject to disclosure under federal law.[19] DLC maintains that it needs this information so that it can contact the parents to inform them of the allegations DLC has received and to obtain permission to review the records of other children as part of its investigation.[20] Interestingly, although DLC wishes to inform parents/guardians of its concerns, it is unwilling to make these disclosures to ASD.

On several occasions, ASD requested DLC's cooperation in developing access agreements and investigation protocols.[21] At oral

---

[18]     Docket 5-7.

[19]     Docket 5-8.

[20]     Docket 5 at 3-4.

[21]     See Docket 5-6; Docket 7-7; Docket 11-4 at 2; Docket 17-7; Docket 17-8.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 6
3:07-CV-0131-RRB

argument, ASD explained that it is concerned about adequate protection from potential liability for unlawful disclosure of confidential information if it were to comply with DLC's request. DLC, however, has declined to negotiate access agreements or protocols for investigations as a matter of policy.[22]

DLC filed a Complaint in federal court on July 16, 2007, seeking injunctive relief to obtain contact information for the parents/guardians of special needs students at Lake Otis Elementary School. One week later, on July 23, 2007, DLC filed a Motion for Temporary Injunction and Preliminary Injunction.[23] Affidavits from DLC staff filed with DLC's motion indicate that the complaints received involve "general problems with classroom conditions and the treatment of students" and an allegation that a "child was subject to abuse/neglect while a student in the classroom."[24] DLC requested that its motion be heard on shortened time so that "parents of the children in the classroom where the alleged abuse and/or neglect [occurred] may be notified."[25] The Court heard oral argument on DLC's motion on July 31, 2007.

---

[22] Docket 17 at 8.

[23] Docket 4.

[24] Docket 5-2 at 2; Docket 5-3; Docket 5-4.

[25] Docket 7 at 2, ¶ 9.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 7
3:07-CV-0131-RRB

## III. STANDARD OF REVIEW

The Court initially notes the parties' disagreement regarding the applicable standard of review. DLC seeks an order requiring ASD to disclose the names and contact information for the parents/guardians of special needs students at Lake Otis Elementary School. DLC titles its request "Motion for Preliminary Injunction and Temporary Restraining Order."[26]

ASD, however, posits that DLC's motion seeks a <u>permanent</u>, rather than <u>preliminary</u> injunction because once the information is released it cannot be recovered.[27] The Court agrees. This distinction is significant because in order to obtain a permanent injunction, DLC must demonstrate "actual success" rather than only a "likelihood of success" on the merits.[28]

A preliminary injunction is a provisional remedy designed to preserve the status quo until the court can resolve the case on

---

[26]    <u>See</u> Docket 4.

[27]    Docket 17 at 9.

[28]    <u>See</u> <u>Sierra Club v. Penfold</u>, 857 F.2d 1307, 1318 (9th Cir. 1988) (<u>citing</u> <u>Amoco Prod. Co. v. Village of Gambell</u>, 480 U.S. 531, 546 n.12 (1987)) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction except likelihood of success on the merits rather than actual success must be shown."); <u>see generally</u> <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 993-94 (9th Cir. 2005) (standard for preliminary injunction).

the merits.[29]  Logically, this is why a party seeking preliminary injunctive relief needs only to demonstrate a likelihood of success, rather than actual success on the merits.  Here, however, DLC does not seek a provisional remedy pending resolution of the matter.  Indeed, <u>whether</u> DLC is entitled to the parent/guardian contact information <u>is</u> the "merits of the case."[30]  Therefore, DLC's motion is properly characterized as a motion for a permanent injunction.

Under "well-established principles of equity," a plaintiff seeking a permanent injunction must show that (1) it has suffered irreparable injury; (2) the available legal remedies are inadequate to compensate for that injury; (3) the balance of hardships between the plaintiff and defendant warrants an equitable remedy; and (4) the public interest would not be disserved by a permanent injunction.[31]  "The decision to grant or deny permanent

---

[29]  <u>Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc.</u>, 448 F.3d 1118, 1124 (9th Cir. 2006).

[30]  <u>See</u> Docket 1 at 5.

[31]  <u>eBay Inc. v. MercExchange, L.L.C.</u>, __ U.S. __, 126 S. Ct. 1837, 1839 (2006) (<u>citing</u> <u>Weinburger v. Romero-Barcelo</u>, 456 U.S. 305, 311-13 (1982); <u>Amoco</u>, 480 U.S. at 542).

injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion."[32]

ASD also asserts that DLC's motion seeks a <u>mandatory</u>, rather than <u>prohibitory</u> injunction.[33] Again, the Court agrees. "A prohibitory injunction preserves the status quo" whereas a mandatory injunction orders affirmative conduct that "goes well beyond simply maintaining the status quo."[34]

DLC argues that since the law already requires disclosure of ASD's parent/guardian contact information, DLC merely seeks to preserve the status quo. However, DLC's argument assumes what it is trying to prove. <u>Whether</u> the law requires disclosure of the directory is what DLC must demonstrate in order to establish success on the merits. Moreover, even if the law requires disclosure of the directory, ASD has not yet disclosed it.[35] An order granting DLC's requested relief would necessarily order

---

[32] <u>Id.</u>

[33] <u>See</u> Docket 17 at 9-10 (<u>citing</u> <u>Meghrig v. KFC Western, Inc.</u>, 516 U.S. 479, 484-85 (1996)).

[34] <u>Stanley v. Univ. of S. Cal.</u>, 13 F.3d 1313, 1320 (9th Cir. 1994) (<u>citing</u>, <u>inter al.</u>, <u>Anderson v. United States</u>, 612 F.2d 1112, 1114 (9th Cir. 1979)) (omitting quotation marks).

[35] Docket 5 at 13.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 10
3:07-CV-0131-RRB

affirmative conduct from ASD, which is the essence of a mandatory injunction.[36]

The Court concludes that DLC's motion seeks a mandatory permanent injunction. Accordingly, the Court reviews DLC's motion for actual success on the merits and heeds the caution that motions for mandatory injunctions are "particularly disfavored,"[37] "subject to heightened scrutiny",[38] and "should not be issued unless the facts and law clearly favor the moving party."[39]

## IV. DISCUSSION

### A. DLC's Asserted Access Authority

As the P&A system for the State of Alaska, DLC is authorized to "investigate incidents of abuse or neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe

---

[36] Cf. Wash. Prot. & Advocacy Sys., Inc. v. Evergreen Sch. Dist., CV03-5062 (W.D. Wash. April 11, 2003) (available at Docket 17, Ex. 10) (declaring motion for release of contact information for parents and/or guardians of all students with disabilities mandatory rather than prohibitory), aff'd, 71 Fed. Appx. 654 (9th Cir. 2003).

[37] Stanley, 13 F.3d at 1320 (citing, inter al., Anderson, 612 F.2d at 1114) (omitting quotation marks).

[38] Dahl v. HEM Pharms. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993) (citing Anderson, 612 F.2d at 1114).

[39] Id.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 11
3:07-CV-0131-RRB

that the incidents occurred."[40]  The DD Act's implementing
regulations define "probable cause" as "a reasonable ground for
belief that an individual with developmental disabilities has been,
or may be, subject to abuse or neglect."[41]  Although none of the P&A
Acts explicitly require ASD to give DLC a list of students and
contact information for their parents or guardians, several courts,
including the Second and Seventh Circuits, have ruled that a P&A
agency is entitled to the names and contact information for the
parents and/or guardians of children with disabilities.[42]

       DLC asserts that it has probable cause for its belief
that ASD staff in the special needs classrooms at Lake Otis
Elementary have engaged in actions which potentially constitute
abuse or neglect toward students with disabilities.[43]  DLC based its
determination on complaints received and information gathered
through its investigation.[44]  According DLC, general complaints
regarding "classroom conditions" are sufficient to establish

---

[40]     42 U.S.C. § 15041(a)(2)(B).

[41]     45 C.F.R. § 1386.19.

[42]     See Conn. Office of Prot. & Advocacy for Persons with
Disabilities v. Hartford Bd. of Educ., 464 F.3d 229 (2nd Cir.
2006); Disability Rights Wisc., Inc. v. Wisc. Dep't of Pub.
Instruction, 463 F.3d 719 (7th Cir. 2006).

[43]     Docket 5 at 3-6.

[44]     Id.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 12
3:07-CV-0131-RRB

probable cause as to all students in the special needs classrooms.[45]
At oral argument DLC clarified that the complaints involved one
special needs teacher, one teacher aide, and one child.

Significantly, the teacher at issue resigned at the end
of the 2006-07 school year and none of his teaching assistants will
be returning for the 2007-08 school year.[46] Nevertheless, DLC
asserts that it has probable cause to obtain the parent/guardian
contact information for all special needs children in order to
contact parents for permission to review records of other children
during its investigation. ASD has provided much of the information
that DLC has requested, but refuses to provide names and contact
information of the parents/guardians of the special needs children
on the grounds that DLC has not demonstrated probable cause and
that FERPA and IDEA prohibit ASD from disclosing the information.

The parties do not dispute that the DD Act authorizes DLC
to make the initial probable cause determination. However, ASD may
seek judicial review of the sufficiency of DLC's probable cause
determination.[47] DLC has made no showing that other children have

---

[45] Id. at 7.

[46] Docket 17 at 5; Docket 17-2 at 2.

[47] See Iowa Prot. & Advocacy Servs., Inc. v. Gerard
Treatment Programs, L.L.C., 152 F. Supp. 2d 1150, 1172 n.1 (N.D.
Iowa 2001) (citing Ariz. Ctr. for Disability Law v. Allen, 197

been or continue to be subject to abuse or neglect. Complaints regarding a former teacher's classroom during the previous school year are insufficient to establish probable cause to investigate the entire specials needs program in a subsequent year absent some showing of systemic neglect. DLC has not made any such showing.

DLC asserts that even without probable cause, it is entitled to parent/guardian contact information.[48] DLC cites 45 C.F.R. § 1386.22(i) which provides that if a P&A agency is denied access to "records covered by the Act it shall be provided promptly with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name and address of the legal guardian, conservator, or other legal representative of an individual with developmental disabilities."[49] DLC argues that under this regulation, "all a P&A must do to receive a list of guardians is to ask for it."[50] However, as to the information at issue in the present case, DLC's reliance on this regulation is tenuous and would produce illogical results, particularly in light

---

F.R.D. 689, 693 (D. Az. 2000); <u>Pa. Prot. & Advocacy, Inc. v. Royer-Greaves Sch. for Blind</u>, 1999 WL 179797 at *8 & n.11 (E.D. Pa. 1999)).

[48]    Docket 5 at 11.

[49]    <u>Id.</u> (<u>citing</u> 45 C.F.R. § 1386.22(i)).

[50]    <u>Id.</u> (<u>citing</u> <u>Royer-Greaves</u>, 1999 WL 179797 at *6-*8).

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 14
3:07-CV-0131-RRB

of ASD's asserted confidentiality obligations under FERPA and IDEA, discussed below. DLC's authority does not support the conclusion that parent/guardian contact information constitutes "records covered by" the DD Act.

### B. ASD's FERPA/IDEA Obligations

ASD maintains that FERPA and IDEA prohibit educational agencies from disclosing an individual's "educational records" or "personally identifiable information contained therein other than directory information," without the written consent of that individual's parents or guardians.[51] Both parties agree that the parent/guardian contact information sought by DLC does not fit within the "directory information" exemption of these statutes.[52]

It appears that no federal court of appeals has addressed the interrelationship between FERPA/IDEA and the P&A Acts in the context of access to parent/guardian contact information as sought by DLC. The Seventh Circuit has addressed the issue of access to the unredacted names of <u>students</u> in an investigative file, but did

---

[51]    <u>See</u> 20 U.S.C. § 1232g(b)(1) (FERPA); 34 C.F.R. 99 (FERPA); 20 U.S.C. §§ 1412(a)(8), 1417(c) (IDEA); 34 C.F.R. 300.611-.627 (IDEA).

[52]    <u>See</u> Docket 17 at 15-17; Docket 18 at 3.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 15
3:07-CV-0131-RRB

not discuss access contact information for parents/guardians.[53] The
Second Circuit has acknowledged the issue of access to students'
parent/guardian contact information, but declined to address it
because the school district abandoned its argument on appeal after
the Department of Education and the Department of Health and Human
Services ("DOE/DHHS") jointly filed an amicus brief ("Amicus
Brief") taking a position on the issue.[54] DLC submits the DOE/DHHS
Amicus Brief as supplemental authority in the present matter.[55]
Additionally, the parties respectively rely on the decisions of two
separate federal district courts.[56]

     DLC relies on a decision of the District of Connecticut
for its argument that the P&A Acts require access to

---

[53]    <u>Disability Rights Wisc., Inc. v. Wisc. Dep't of Pub.
Instruction</u>, 463 F.3d 719, 724 (7th Cir. 2006).

[54]    <u>See</u> <u>Conn. Office of Prot. & Advocacy for Persons with
Disabilities v. Hartford Bd. of Educ.</u>, 464 F.3d 229, 233, 237-38
(2nd Cir. 2006).

[55]    <u>See</u> Br. for Dep't of Educ. & Dep't of Health & Human
Servs. as Amici Curae Supp. Pl.-Appellees, <u>Conn. Office of Prot. &
Advocacy for Persons with Disability v. Hartford Bd. of Educ.</u>, No.
05-1240-CV (2nd Cir. June 2, 2006) (<u>available at</u> Docket 15-2).

[56]    <u>See</u> <u>Conn. Office of Prot. & Advocacy for Persons with
Disabilities v. Hartford Bd. of Educ.</u>, 355 F. Supp. 2d 649 (D.
Conn. 2005); <u>Wash. Prot. & Advocacy Sys., Inc. v. Evergreen Sch.
Dist.</u>, CV03-5062 (W.D. Wash. April 11, 2003) (<u>available at</u> Docket
17, Ex. 10), <u>aff'd</u>, 71 Fed. Appx. 654 (9th Cir. 2003).

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
   ORDER AND PRELIMINARY INJUNCTION - 16
3:07-CV-0131-RRB

parent/guardian contact information notwithstanding FERPA/IDEA.[57] In _Hartford_, the district court granted injunctive relief in favor of the Connecticut Office of Protection and Advocacy ("OPA") to obtain a directory of students containing parent/guardian contact information from the defendants Hartford Board of Education, Hartford Public Schools, and Hartford Superintendent of Schools (collectively "Hartford defendants").[58] The district court concluded that allowing OPA to access names and contact information served the purposes of the P&A Acts by allowing OPA to pursue an investigation while limiting its access to records until it received authorization from students and parents, as the court deemed required by FERPA and IDEA.[59] Thus, the district court concluded that it was able to harmonize the various statutes.[60]

On appeal to the Second Circuit, the Hartford defendants initially argued that FERPA and IDEA prohibited them from providing OPA with the list of students' parent/guardian contact information.[61] However, the Hartford defendants abandoned this

---

[57] _Hartford_, 355 F. Supp. 2d at 664.

[58] _Id._

[59] _Id._

[60] _Id._

[61] 464 F.3d 229, 235-36 (2nd Cir. 2006).

argument at oral argument and agreed to defer to the position taken by DOE/DHHS in its Amicus Brief that the P&A Acts override FERPA's non-disclosure requirements.[62]  Because the Hartford defendants abandoned their FERPA argument, the Second Circuit expressly did not address it.[63]  Notably, DOE/DHHS advanced the position that "FERPA does not bar a P&A from obtaining access to the name of and contact information for a parent, guardian, or other legal representative of a minor student with a disability" when "the P&A's probable cause determination satisfies the requirements for access to records under the . . . DD Act."[64]  DOE/DHHS further asserted that where the statutes are in conflict, the DD Act is "properly understood as a limited override of FERPA's generally applicable non-disclosure requirements."[65]

This Court declines to adopt the reasoning of the DOE/DHHS Amicus Brief because it reaches conclusions that are inconsistent with case law within the Ninth Circuit which this

---

[62]    Id. at 236.

[63]    Id. at 237-38.  The court nevertheless accorded "some deference [to the DOE/DHHS Amicus Brief] on account of the 'specialized experience' and information available to the agency." Id. at 239.

[64]    Docket 15-2 at 16.

[65]    Id.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 18
3:07-CV-0131-RRB

Court finds persuasive, namely the decision of the Western District of Washington in <u>Washington Protection and Advocacy System, Inc. v. Evergreen School District</u> which the Ninth Circuit affirmed.[66]

In <u>Evergreen</u>, the Washington Protection and Advocacy System ("WPAS") sought a preliminary injunction to obtain the names of all students with disabilities participating in the Evergreen School District's Work Experience Program and contact information for their parents and/or guardians, which the school district had refused to release.[67] The court denied the motion because the allegations were not sufficient to establish probable cause that the child in question had suffered abuse or neglect[68] and because it was "not sufficiently satisfied that the P&A Acts override the FERPA and IDEA."[69] The court held that WPAS failed to show that FERPA/IDEA and the P&A Acts could be "'harmonized'" because "the type of information sought cannot properly be characterized as 'directory information.'"[70] The court explained that "[d]irectory information . . . clearly does not include contact information for

---

[66]     Case No. C03-5062 (W.D. Wash. April 11, 2003) (<u>available at</u> Docket 17, Ex. 10), <u>aff'd</u> 71 Fed. Appx. 654 (9th Cir. 2003).

[67]     <u>Id.</u> at 1.

[68]     <u>Id.</u> at 5.

[69]     <u>Id.</u> at 4.

[70]     <u>Id.</u> (<u>citing</u> 20 U.S.C. § 1232g(a)(5)(A)).

parents/guardians or information sufficient to establish which students are participating in [Evergreen School District's Work Employment Program]."[71] On limited review for abuse of discretion, the Ninth Circuit unanimously affirmed the district court's decision.[72] The court acknowledged that its review was "much more limited than review of an order involving a permanent injunction, where all conclusions of law are freely reviewable."[73] Based on that standard, the court concluded: "We cannot say that the district court abused its discretion here."[74]

ASD, like the school district in <u>Evergreen</u>, argues that the information sought by DLC pertaining to parents and guardians of the students is not "directory information" (which can be disclosed under FERPA) but rather "personally identifiable information" which is protected by FERPA and IDEA.[75] ASD points to the plain language of applicable regulations which classifies information about parents or guardians, including their identities,

---

[71]     <u>Id.</u> (<u>citing</u> 20 U.S.C. § 1232g(a)(5)(A)).

[72]     <u>See</u> <u>Wash. Prot. v. Evergreen Sch. Dist.</u>, 71 Fed. Appx. 654 (9th Cir. 2003).

[73]     <u>Id.</u> at *654 (<u>citing</u> <u>Walzac v. EPL Prolong, Inc.</u>, 198 F.3d 725, 730 (9th Cir. 1999)).

[74]     <u>Id.</u> at *655.

[75]     Docket 17 at 13-17.

as "personally identifiable information" which cannot be disclosed without written consent of the parents or guardians. Under FERPA, "directory information" includes "the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student."[76]  Noticeably absent from the definition of directory information is any reference to the identities or contact information of the parents and/or guardians of the children.

In contrast, FERPA explicitly protects parent/guardian contact information from disclosure as "personally identifiable information" which includes, but is not limited to: (a) The student's name; (b) The name of the student's parent or other family member; (c) The address of the student or student's family; (d) A personal identifier, such as the student's social security number or student number; (e) A list of personal characteristics that would make the student's identity easily traceable; or (f) Other information that would make the student's identity easily

_____

[76]    20 U.S.C. § 1232g(a)(5)(A).

traceable.[77] The information requested by DLC is personally identifiable information because it would likely contain the names of the children's parents and/or family members, addresses for the children's families, and personal characteristics of the child such as the children's placement in a special needs classroom.

Like the Western District of Washington in Evergreen, this Court is likewise unpersuaded by DLC's argument that the P&A Acts override FERPA/IDEA in this instance. Although the Ninth Circuit's memorandum order affirming the district court in Evergreen does not contain explicit discussion of the district court's legal conclusions, the review for abuse of discretion included a determination that the district court relied on correct legal standards.[78] Based on this limited scope of review, the Ninth Circuit found no abuse of discretion and therefore impliedly held that the district court's legal conclusions were not erroneous.[79] This Court cannot surmise how the Ninth Circuit would have ruled if it had "freely review[ed]"[80] the district court's conclusions of law

---

[77] 34 C.F.R. § 99.3.

[78] 71 Fed. Appx. at *654.

[79] Id. at *655.

[80] See id. at *654 (citing Walzac v. EPL Prolong, Inc., 198 F.3d 725, 730 (9th Cir. 1999)).

in Evergreen, or how it might rule now in light of recent decisions of the Second Circuit,[81] Seventh Circuit,[82] and positions taken by DOE/DHHS in their Amicus Brief to the Second Circuit.[83]  The Court declines to follow decisions of the Second and Seventh Circuits and accordingly holds that the P&A Acts do not override ASD's FERPA/IDEA privacy obligations under the facts and circumstances of this case.

###   C.   Irreparable Injury and Inadequacy of Remedy at Law

DLC argues that it will suffer irreparable harm without the Court's intervention because it will not be able to carry out its mandate to investigate allegations of abuse and neglect and to protect individuals with disabilities.  However, there is no indication of continuing potential for abuse or neglect since the teacher and teaching assistant provoking the complaints are no longer employed at the school.  Moreover, any harm suffered by DLC in the absence of injunctive relief is neither irreparable, nor

---

[81]     Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ., 464 F.3d 229 (2nd Cir. 2006).

[82]     Disability Rights Wisc., Inc. v. Wisc. Dep't of Pub. Instruction, 463 F.3d 719 (7th Cir. 2006).

[83]     See Docket 15-2.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 23
3:07-CV-0131-RRB

without adequate remedy at law.  DLC can continue to investigate by making a proper legal inquiry.

D.   **Balance of Hardships:**

DLC argues that the balance of hardships tips in its favor because producing the information would not require a significant investment of time or resources from ASD and because DLC is required to protect the privacy and confidentiality of student information once it is provided to DLC.  DLC alleges it would suffer significant hardship without the information because it would be unable to complete a full investigation.  However, after considering the facts and the state of the law relating to this matter, the Court is unable to conclude that the balance of hardships between the parties warrants an equitable remedy in favor of DLC, particularly in light of ASD's frequently-expressed willingness to cooperate through the formation of access agreements and protocols.

E.   **Public Interest:**

DLC has not shown that the public interest would not be disserved by its requested injunction.  Given that ASD and DLC have similar interests, it would appear that the public interest would be better served through cooperation between the parties.  **It is time they work together to achieve their mutually held goal of**

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
   ORDER AND PRELIMINARY INJUNCTION - 24
3:07-CV-0131-RRB

**ensuring that children with disabilities are able to obtain a quality education in a safe environment.**

**V. CONCLUSION**

DLC has neither demonstrated sufficient probable cause, nor that the facts and law clearly favor its request. Accordingly, DLC's Motion for Temporary Restraining Order and Preliminary Injunction is **DENIED**. Because this order resolves the merits of the case, DLC's Complaint is hereby dismissed with prejudice.

**IT IS SO ORDERED.**

ENTERED this 26th day of September, 2007.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION - 25
3:07-CV-0131-RRB